Each side, I believe, has 10 minutes. Good morning, and may it please the court, Jill Gensling on behalf of the appellant petitioner, Dewan Potts, and I'd like to reserve three minutes for rebuttal if possible. The strike of Juror 2405, which resulted in no African American sitting on Mr. Potts' jury, was substantially motivated by race, and the district court's conclusion to the contrary was clear error. You would have to find, right? Yes, you would have to find that, Your Honor, and there are four clear errors that I'd like to focus on this morning. Can you speak a little more into the mic? Thank you. Of course. For losing your head. Sorry about that. The first is the district court's failure to address the prosecutor's unprompted emphasis on race in his questioning of Juror 2405. The failure to address it, did you say? Correct. Okay. He did not acknowledge it in any way. Okay. Juror 2405 had said nothing about race when she described the incident with her son. She hadn't mentioned it at all. It was the issue of race, and to her voir dire, and asked two of his three questions about issues of race. He didn't question any of the white jurors about issues of race. He didn't ask people who had been arrested or had negative experiences or relatives who had been arrested if they thought race was an issue. He didn't ask them if they thought racial profiling was an issue generally. And as Respondent's brief shows, there's no way to explain this unprompted questioning on race without... Well, it is a cross racial identification, and it was an identification case, right? It was, although the... I mean, that obviously, peremptory challenges, we have Wheeler-Batson, and we have to abide by that. But also, too, the context of it depends on what the facts are in a particular case. And my understanding of this particular case, it was a robbery, it was a cross racial identification, and that Juror 2405 said that her son had been misidentified, spent a night in jail, and it turned out that her son was African American, and the person that misidentified her son was white. And the concern stated was that even though she said, it wouldn't affect me at all, the concern stated was, well, if you actually get in the jury room and you start deliberating and it kind of all comes down, is that a proper basis for a peremptory challenge? Well, Your Honor, I would point out that the prosecutor repeatedly distinguished between the issue of bias against police prosecutors in the judicial system, which was his stated reason for the strike, and issues about identification or misidentification, which he repeatedly stated were not his reasons for the strike and not his concerns about the strike. So while the court is correct that it was a case where, at the time, the evidence was about cross racial identification, the prosecutor has told us, he's told the court several times, that that's not his reason for striking the juror. And the Supreme Court has said that when a prosecutor states his reason, he's got to stand or fall on it. It doesn't matter if the court can see another reason that might hold up, such as cross racial... Well, we said at that first hearing, so what was the prosecutor's reason? His reason was that her son had had a negative experience, and when I asked him the first time, he didn't even use the word identification. He said, she had a negative experience, and I didn't think she'd be able to put it behind her and be fair to me as the prosecutor, the police, or the justice system. Can I ask about that? Because the negative experience doesn't seem to have been with the police. Her son was misidentified by a woman, and the prospective juror knew that the woman... Knew the woman's race, didn't really know anything else about her, but I don't think she pointed to any bad action by the police. The police arrested somebody who'd been misidentified by somebody else. That's correct, Your Honor. She said nothing about the police, and he asked nothing about the police or her feelings about the police. He didn't say, for example, do you think the police treated your son fairly, or do you think they mistreated him in any way? Did they... Do we know the race of the police? We don't. Officers involved? Okay. Alright. You were saying there's clear error, and we didn't let you get past your first bullet point, which was... Thank you. What I'm referring to, which is that he claimed that it was concern about bias against police prosecutors in the judicial system, but he did not ask her a single question about any of those three potential biases. And the court failed to address the precedent of the Supreme Court and this court, holding that a prosecutor's failure to question a juror about a bias that he claims is the reason for a strike is strong evidence of discriminatory pretext. Strong evidence, but not conclusive. No, it's a totality of the circumstances test, and that's why... What's your third point? My third point, Your Honor, is the district court's treatment of the mischaracterization of the juror's testimony when the prosecutor said that she said it would leave her with an effect when, in fact, she had said the exact opposite. The district court found that to be an honest mistake, relying on the Alamon case of this court, but the Alamon case distinguished between mischaracterizations that state the juror's beliefs in a manner that's completely contrary to what they actually said, and less significant mischaracterizations that can be explained as a transposition of juror responses. In Rice, there was a case where... And that was a Supreme Court case where the record showed that the prosecutor had referred to a different juror, not the juror at issue, as being young when she wasn't young, but they were discussing three jurors at the same time, two of whom were young, including the juror who was the subject of the strike. In Jamerson v. Runnels, this court also drew a distinction between strikes that misstate the juror's testimony in a manner contrary to their stated beliefs, which the Supreme Court said in Miller L. is evidence of discriminatory pretext, and less significant strikes that do not create a new basis for the record. In that case, the prosecutor had stated that the juror had brothers who were serving prison time when she had said that she had a brother serving prison time. Can I ask you to focus on a question that... I'm gonna ask both lawyers to focus on the same thing, because I think Batson requires purposeful discrimination, requires that we order the hearing, and this prosecutor was found credible. And I think the judge said conscientious, I think he used the word conscientious, as though this person was doing his best to remember something like 13 years ago, what his reasons were. And so what bothers me about these cases is that I think at this point, we all know about implicit bias, we all know we have biases, all of us, judges included, and the question is, what do we do about those? Batson, at the time it was issued, they called it unconscious bias there, but they recognized that, and yet the Supreme Court has required purposeful discrimination, a finding of purposeful discrimination. So what I'm struggling with is, I think you have strong points here, and I appreciate you summarizing them for us, but I get back to this credibility determination, a favorable credibility determination, and how we would at that point, once that finding is made, how can you show, how could we show that there's error for failure to find purposeful discrimination? Well, I have a couple of responses to that, Your Honor. First, I would clarify that this court has defined purposeful discrimination as race being a substantial motivating factor for the strike. It doesn't have to be racial animus. It doesn't matter whether that's the result of implicit bias or explicit bias, as long as race was a substantial motivating factor for the strike. And at this point, we're de novo, right? At this point, we're de novo. We're de novo of the state court's decision. That's correct, Your Honor. Okay. And with respect to the credibility findings, the analysis is whether or not the stated reason was the prosecutor's actual reason for the strike. And this court and the Supreme Court have often reversed those findings by the district court when the record itself shows that the stated reason was not the actual reason for the strike. Even when there's positive credibility determination? Yes, Your Honor. Give me those citations. Sure, Your Honor. In Miller L., in Snyder, in Curry v. McDowell. And Curry, I think, is instructive. Snyder had a positive credibility determination? I believe it found that the reason was credible. Okay. And there's language, Your Honor, in Curry v. McDowell, where the court explained that the finding at step three is a question of whether or not... Because of the finding is a question of whether or not the prosecutor's stated reasons for the strike are his actual reasons for the strike. That it's necessarily a credibility finding, and they analyzed it as a credibility finding. And the court discussed the Hernandez case and how the Hernandez case talks about how we give deference to the credibility findings of the trial court because they're in the courtroom, they see the demeanor of the prosecutors as well as the jurors. And how in some cases, and in that they use the example of a situation where the judge suggests reasons for the strike before the prosecutor has given them, and then the prosecutor parrots those reasons, those credibility determinations are entitled to less deference. And so implicit in that is a finding that... A step three finding that the reasons are not pretextual is itself a credibility determination. I don't have a case where there's an explicit reliance on the prosecutor's demeanor the way the district court did in his finding here. But the Supreme Court has said that there are factors that beyond demeanor that go into a credibility finding. And the argument that I have is that the legal errors that the court made in terms of not addressing the prosecutor's failure to question, which shows that the evidence is pretextual, not applying the right legal standard to addressing his mischaracterization of the juror's testimony, the failure at all to address the race-based questioning of this juror, which has never been explained. And then, of course, there's the claim to have conducted a comparative juror analysis that he did not actually conduct. But that declaration, that was generated on remand. We didn't have that. The Ninth Circuit didn't have that. That's correct. This court had no reasons at all before it at the time. Okay. Thank you. Yes. And so it looks like my time is up, but that is another clear error that I think severely undercuts the district court's credibility finding. I'll give you two minutes for a rebuttal. Thank you, Your Honor. I appreciate that. May it please the court, Deputy Attorney General Rommelman on behalf of the respondent awarded in this case. I just want to correct one thing at the outset. I think opposing counsel said the relevant decision here is the state court decision. It's the district court's decision that I believe that this court has to review de novo. But in that decision are the district court's clear error. And juror 2405, the subject juror in this case, she was unique in the panel of jurors and petitioners case. She was the only one who had a close family member, her son, who was misidentified and not only that, detained overnight. The district court, I think to Judge Kristen's point, was sensitive that she may have even been pro-police in this case. The district court took that into account. But despite that, the district court said the prosecutor was reasonable in believing that she would not be able to put her son's then recent experience behind her. And as this court has indicated, this was a cross-racial identification case. And juror 2405 was the only juror in this entire panel of jurors that had a problem with a close family member being misidentified. What about the other two folks who raised their hands in response to the question? Your Honor, those other two jurors were not, did not have close family members being misidentified. They had experiences with identification where one of the jurors himself, who was the pastor, believed he misidentified somebody because of race. But he didn't have a close member that was misidentified and then detained by police. So he was making the misidentification himself. So when you made the point there of saying and detained by the police, I didn't read her as ever finding fault with what the police had done there. They responded to a really unfortunate, maybe even tragic misidentification that cost her son a night in jail, and I'm sure a lot of anguish. But I didn't hear her pointing the finger at the police. And she didn't, Your Honor. In fact, she said she did not blame the police or did not the proper finding is that the trial prosecutor could be legitimately concerned that a juror may harbor some resentment against the prosecutor's office because of that experience of her son. She doesn't listen. The case in terms of I know it was like a robbery where a lot of money was taken and people were tied up and all of that. Um, did was the defense that it wasn't them? Yes, that it was someone else. He was tried with his brother, right? That's correct. And I don't know what happened to his brother, but he's his brother somehow is not on this same track together. But, uh, so, uh, there were people at the business or whatever that identify did they identify Mr Potts identified both and both of them. And did they say they were? Where did they was? Did they testify? Did they say they were somewhere else? Or did they? Or did someone say they were somewhere else? Or was that because sometimes people say, Well, I was there, but I didn't do what someone said I did. And sometimes people say I wasn't there. It was their defense that they weren't there. Yes. Petitioner presented an alibi defense that he was not there. And he had witnesses, I believe, who testified that he was somewhere else at the time of the robbery. I believe that his girlfriend's house. I was not at the scene of the crime. So they did present the alibi evidence. And, of course, that was rejected by the jury. But again, that goes to the point, I believe to the cross racial identification, how that was an important issue in this case. And the prosecutor has consistently stated that identification was a key issue. He was concerned about jurors who would be who may have had a negative experience with identification, which juror 2405 was unique in the sense that she did because her son is, as this court well knows, was was misidentified and detained overnight. I also want to address one thing about opposing counsel's assertion that there was unprompted race based questioning. That didn't happen. If the court goes back and looks at the record, it was not unprompted. One of the jurors that petitioner uses in comparative juror analysis in the brief in which the district court engaged in, which I would also argue on another point, that was not necessary because comparative juror analysis first came to the fore with Miller L. versus Drecke, which was three years after the trial in this case. But aside from that, juror 1612. That's why we're talking about comparative juror analysis, because I thought when we had this discrepancy, the prosecutor was clear he didn't do that. Right. I was refuting opposing counsel's point that there was a comparative juror analysis done by the trial prosecutor in his declaration. I understood your point a little differently, but now I'm caught up. So that's fine. Go ahead. Yeah. But juror 1612, there was questioning of that juror in the voir dire, which happened before juror 2405 about cross racial identification. So these issues were front and center and they weren't unprompted. The prosecutor's reasons... No, that was juror 9350. The other African-American juror that was dismissed for cause was 9350. 1612 was the juror who said that she was robbed or she witnessed a robbery. One of the suspects was Caucasian. One of the suspects was African-American. She could identify the Caucasian suspect, but not the African-American suspect because she didn't pay attention to the African-American one. And she paid attention to the looks of the Caucasian suspect. That was juror 1612. But these issues were in the fore. They were before all parties and petitioners. Defense counsel was asking questions about cross racial identification and whether they believed there was unfair treatment of family members or prospective jurors themselves by police. So this question was not... The trial prosecutor's questions of juror 2405 were not unprompted. The trial prosecutor simply did not continue with any further questioning after asking those three questions about her son because at that point, and as the district court found, it was unnecessary. The trial prosecutor had obtained all the information he needed to make a decision at that point. No need for points that opposing counsel just raised because I think the first three that she raised are points that the prior Ninth Circuit panel raised when the majority decided that a prima facie case had been made. Her response is that after the Ninth Circuit ruled that those points established a prima facie case that on remand, the district court didn't address them. Is that right? No, the district court in its second report and recommendation, I believe, addressed all the points there. It's just not to the satisfactory of opposing counsel's position. They talked about, and I think one of the points of opposing counsel was this issue of the race based questioning. Well, it was discussed where the district court, and I don't have the site in the R&R, but the district court does talk about how the trial prosecutor, once those three questions were asked, did not need to go any further to determine if juror 2405 would be biased against the prosecutor's office. So that's one of the points that was specifically... I think the point was that it was the prosecutor initiated the subject of race. Wasn't that relied upon by the prior Ninth Circuit panel and was... I think it was. And so the question is whether the district court engaged in that on remand. On remand, I believe that the district court, per this court's instructions, did an evidentiary hearing to determine whether there was a Batson violation, and we were beyond step one at that point, at the point of the evidentiary hearing, went to step two and three. And as this court knows, the district court did a very thorough evidentiary hearing. We were both there at the hearing. It was very thorough. Right, except... And I'll grant you all of that, and I've already... I led with my concern about the positive credibility determination and how that really gets factored in. But the definition of a prima facie case is if these points go unrefuted, they win. Right? So that's why it seems to me, I never really thought of it that way, but I'll go back and the 900th time, the order. I'm sure we've all read it many times, but just since you're at the microphone, I wanted to give you a chance to respond to that point. I would just say to that, the district court did address those points that Petitioner's counsel was concerned with, the one that I specifically addressed. But before I run out of my time, I wanna make clear that the district court... What has to be found in Batson is that there was a preponderance of evidence of purposeful racial discrimination, and the district court found that the prosecutor, his reasons, his stated reasons for removing juror 2405 did not show purposeful discrimination under any standard. And those factual findings, for this court to overturn, it has to find clear error, and even if it would weigh the evidence differently, taking into account opposing counsel's three points you raised, it would not satisfy the clear error standard. This court would still have to affirm the district court. Any time there's a positive credibility determination where a prosecutor shows up and is deemed credible, that it's not gonna be possible to show purposeful discrimination? I think it would be very difficult if the district court is tasked with conducting the evidentiary hearing, and they find the prosecutor to give a credible and conscientious reason for dismissing the juror, it'd be very hard for an appeals court to overturn that finding. It's entirely consistent, though. You're out of time, so Judge Callahan's gonna jump on me here in a minute. No, no, no. That's her job. But it would be entirely consistent. This is what I really grapple with, is in this very important area of the law, we all have implicit biases. I think the research now is very clear on that point. So I can do something in a discriminatory way, not even recognizing it in myself. I think that's true of all of us. And so it's just an intersection that's very troubling to me. Is there anything you wanna say in response to this? Any guidance you wanna give me where I should look in the case law on this point? I would point out the cases from this court and from the Supreme Court, where it talks about credibility determinations being made by the fact finder, that those have to be given a lot of weight. This court did order the evidentiary hearing, and there are human imperfections, but this court has to rely on what was done in the district court. That was the very reason for sending the case there in the first place. And the prosecutor was deemed credible, and there was no bats in violation as found by the district court. Thank you. Thank you. Thank you. I'd like to start by saying that the district court did not address the fact that the prosecutor's questions were about race to juror 2405 and no one else. That fact was I would note that respondent's explanation for it being unprompted has shifted. In its brief, respondent said that it was prompted by the voir dire of the other African American juror in the veneer, but that voir dire happened afterwards. Now he's saying it was prompted by juror 1612. But critically, the prosecutor didn't ask juror 1612 any questions about race or the racial component of the misidentification that she experienced. He only asked questions about race to juror 2405 and then the one Latino juror where he said, I noticed that you have a Latino surname. Do you think police treat you differently because of your race? Asked nobody else those questions. I would also like to point out that for all of respondent's talk about the role of identification in the case, and the prosecutor's focus on that in the voir dire generally, he said over and over again that that was not his reason for the strike. Concerns about identification were not his reasons for the strike on this case, and on page 36 to 37 of my brief, I point to, I think, five or six times in the record where he said one is biased at 2405. The others, the seated jurors, were identification. Those were two different things in my mind. He even said, I don't even understand why we're talking about the two of them at the same time, despite the fact that he had submitted a declaration in which he had told the court that he did an on the ground comparison at the time of the trial of these two jurors' experiences or these three jurors' experiences, which he did not actually do. And I think that that declaration, which is, it is undisputed. When was that declaration prepared? I'm sorry? When was that declaration prepared? He testified that they began working on it before the deposition. It was submitted after the deposition, before the evidentiary hearing. The deposition was July. The deposition was July. Months later, in September, October, September, they had the, is that right? Correct. The declaration was inked. It was inked, signed, and filed with the court. Well, actually, I think it was signed. Was that prepared by the DA's office, or was it prepared by someone that was working for the petitioner? The prosecutor testified that the initial draft was prepared by Respondent's Council, and that it was then a joint effort going back. By the Respondent's Council? No, by the Attorney General's office. Okay, I think that was Judge Callahan. Yes. I'm sorry. I didn't understand the question. It wasn't your side that was preparing the declaration? No, it was not my side. It's so peculiar, I had to go back and check this. The deposition comes first. Correct. So what was the purpose of the declaration? Was it a... The court had ordered that the party submit declarations from their witnesses to serve as their direct testimony at the evidentiary hearing. I see. And the declaration differed markedly. Correct. But that was the direct testimony. So they were just cross examined on the declaration? As well as other aspects of his testimony. I see, thank you for that. Yes, and it differed markedly from the testimony that he gave at the evidentiary hearing as well. That point was addressed by the trial court? Yes. It was, but the trial court simply said it doesn't undermine his credibility without any explanation for why submitting a misleading declaration to the court about what he remembers about this juror and what thoughts he had and how she compared to other jurors how that wouldn't affect her credibility. And I'm not aware of any case where there's that type of misrepresentation to the court where an appeals court has sustained a credibility finding. And I would point the court to Foster v. Chapman, where a prosecutor submitted a written brief with a whole story about how he had come to strike a juror, and it was in complete contrast to the record. And the prosecutor had said that the juror had appeared initially on a list of questionable jurors and somehow came to be moved over to know when the evidence showed that from the start she was on the list of definite no's. And that was the first reason the Supreme Court cited in Foster v. Chapman why, despite the fact that the prosecutor's stated reasons seemed plausible enough on their face, the record reflected that they were not the actual reasons for the strike. And that brings me to the next point that I wanted to make. We're already four minutes over, but go ahead and wrap up in a minute. Thank you. Respondents' counsel had said the district court found that it was reasonable for the prosecutor to think that she would be affected even though she said she had not. But the question isn't whether it's reasonable or plausible, it's whether it was his actual motivating reason for the strike. And given that he did not ask her any questions about those biases, that he claims were the reason, and all of the other reasons and errors that I pointed to in my brief, I think the record is clear that it was not the actual reason for his strike, and that the district court committed clear error in finding that it was. Alright, thank you both for your argument. This matter will be submitted. This court is in recess until tomorrow at 9 AM.
judges: Callahan, Christen, Nelson